The opinion of the Court was delivered by
Dunkin, Oh.
The first and second grounds of appeal taken by the plaintiff will be considered together. By the marriage articles, T. Heyward Thayer covenanted to settle the house and *161 lot in Broad street particularly described, four negroes, Anthony, Cora, William and Jacob, “as also each and every parcel of kitchen and household furniture, plate, linen, and so forth, wherewith the same (meaning the house) shall and ought to be completely and suitably furnished.” No schedule was annexed to the articles.
For the reasons stated in the decree, the Chancellor held this ante-nuptial contract to be null and void as to creditors and purchasers; and that the subsequent settlement, made in conformity with the articles, “ could not stand on the valuable consideration of marriage, but must be regarded as post-nuptial, and the consideration voluntary.”
The Act of 1792, like all other remedial laws, must receive a reasonable construction in reference to the objects to be accomplished. It was not intended to declare a forfeiture in consequence of the violation of a prohibitory law, but to protect creditors and others, who might be misled by appearances, and defeated by latent titles. It is admitted by all that, anterior to the marriage, the intended wife stands, at least, on an equal footing with a creditor or purchaser. The transaction of a creditor or purchaser may be vitiated for fraud, and so may that of the intended wife. But if the transactions are bona fide, they are equally entitled to the protection of the Court. It is scarcely necessary to say that no schedule is necessary if the property to be settled is sufficiently described in the body-of the instrument. A schedule is only required in the alternative ; such are the terms of the enactment, and this construction is recognized in repeated decisions. The description must necessarily be according to the character of the property to be settled. All must be done that can reasonably be required in order to give information, and place persons on their guard. But, as has been said, the contracting parties have rights which are to be regarded as well as those of creditors. It was not denied that the want of such description as the Act required, rendered the whole instrument invalid, and it was then strenu *162 ously contended, that, if the contents of a china closet or wine cellar, (although so described,) were not specifically enumerated, it would invalidate the settlement of a large estate. If the Act requires such minuteness of description, it appears to me difficult to resist the conclusion of the argument. But, if a defective enumeration of this chairacter vitiates a settlement, a mis-description would be equally fatal; and few settlements which attempted a description would be proof against such a scrutiny. Our decisions afford no support to the extreme position assumed by the plaintiff. Heriot vs. Higham & Fife, Bail. Eq. 222, was decided more than a quarter of a century ago. . Emily Wakefield was entitled to a portion of a residuary fund in the hands of the executor of her grandfather, Daniel Cannon, and in 1804, in contemplation of her marriage with E. 0. Thomas, her property was settled, with no other description than a legacy under the will of her grandfather, Daniel Cannon, deceased. In 1830 the validity of this settlement was questioned in a suit between Higham and Fife, creditors of E. Gr. Thomas, and the trustees of the settlement.
The instrument was sustained by Chancellor De Saussure, who held the description in the body of the settlement to be sufficient, and that no schedule was necessary. “Newstatutes “ (says he) are always construed according to the subject matter, “ and to give them a fair and full effect and no more.” The first ground of appeal was because the settlement was void for want of a schedule, and of all specifications, subsequently, of the precise property secured by the deed. The Court of Appeals concurred with the Chancellor, and affirmed his judgment. “ It was impossible (they say) to have described the thing settled, a legacy, otherwise than as it is described in the settlement. A schedule, therefore, would have been useless.”
It is not an unusual covenant in articles that any property subsequently accruing to the wife, by inheritance, or otherwise, should be settled to the same uses. Upon the authority above cited, it would be difficult to deny that a settlement of such *163 subsequently acquired property, in conformity'with the covenant, was sustained by a valuable consideration.
Then it was supposed that Allen vs. Rumph, 2 Hill Ch. 1, sustained the views of the plaintiff. But in that case Janet Allen had been for eight years in possession of slaves and other personalty, in which she had an absolute interest with her son Benjamin, under the will of her deceased husband. Being thus in possession of the property, a settlement was executed with no other description than “the said legacy so bequeathed by the said Josiah Allen, and all and singular any other species of property belonging to the estate of the said Josiah Allen to which she may be entitled, with the increase of slaves, stock, &c.” This description was held to be insufficient. She was in possession of the whole of the property under the bequest, and had been for eight years. The negroes could have been enumerated or named and set forth in the instrument, or in a schedule annexed. Judge Johnson, who had delivered the opinion in Sighctm $ Mfe ads. Heriot, pronounced the judgment, also, in this case, and says: “ Certainly this description does not correspond with the particularity intended by the Act, nor is there any schedule connected with it, containing a more certain description.” But, if the deed had described the plantation by metes and bounds, sixty negroes, (by name) together with the stock of cattle, hogs, &c., on, and belonging to said plantation, the description would hardly have been held defective, or that the whole settlement was void, because the stock of cattle were not more particularly described or enumerated.
In the case before us, the articles are prospective. The house was to be paid for and furnished, and the covenantor stipulates to settle the house, “ together with each and every parcel of kitchen and household furniture, plate, linen, and so forth, wherewith the same shall, and ought to be, completely and suitably furnished.” This was all the description which could be then given, and it was all that was necessary. *164 If the wife’s property bad been large, and bad been included and fully described in the settlement, and the husband bad covenanted that, within thirty days after the solemnization of the marriage, he would lay out two thousand pounds in the purchase of a house, completely furnished, could it be contended that this settlement was void for want of specifications, and that the rights of the husband attached not only to the property afterwards purchased and duly settled, but also to the property of the wife which was also included in it ? Such construction would render the statute an instrument of fraud and spoliation instead of a protection to the unwary. This Court is of opinion that the description in the articles is sufficient, and that the subsequent deed of July, 1843, was sustained by a valuable consideration. This virtually decides the defendants’ ground of appeal. In compliance with his previous undertaking, the husband executed the settlement, to which a schedule is annexed, describing the furniture with great particularity, and also, “ closets containing glass, china and silver plate.” Assuming that these fall within the character of articles covenanted to be procured and settled, the trustee is a purchaser for valuable consideration, and stands on the purchase. The description is sufficiently definite for any such or the like purpose. A legacy of that character would pass all the glass, china and silver plate found in the closets, and such is the effect of the deed.
The plaintiff’s sixth and seventh grounds of appeal relate to certain negroes purchased since the date of the settlement. The bills of sale were taken in the name of the trustee. On this subject the Chancellor remarks: “There is not a particle of evidence adduced on the part of the plaintiff, impugning the bonafides of these bills of sale. They must be presumed to be fair, corroborated as they are by the defendants’ answer.— The plaintiff contends that these negroes should be subject to his claim, because the bills of sale were not recorded.” The Chancellor then proceeds to show, (very satisfactorily in the judgment of this Court,) that recording is not necessary in *165 order to give validity to such deed. It is here insisted that the deeds are void there being no record that the property had been substituted for property included in the settlement agreeably to the requirements of law. This Court expresses no opinion as to the sufficiency or insufficiency of the evidence, showing that the property purchased was in substitution of that included in the settlement, as no such question is presented by the ground of appeal. But assuming that the property was purchased with trust funds, and that “ the deeds,” as the Chancellor concludes, “ were fair,” we concur with him that recording was unnecessary. And so, in regard to the slave September. If purchased with trust funds, (as the Chancellor concludes and the plaintiff does not hear question), the subsequent possession was in accordance with the trusts declared.
The observations made in relation to the first and second grounds of appeal substantially dispose of the third. The trustee is regarded as a purchaser for valuable consideration. If the circumstances disclose actual fraud in the parties this consideration would not protect the settlement. But fraud is a matter of evidence and we are satisfied with the views presented by the Chancellor upon this subject.
The fourth ground of appeal insists that the interest of T. Heyward Thayer, under the settlement, ought to have been defined and declared subject to the satisfaction of his debts.— By the terms of the settlement the trustee is to permit the husband and wife, during their joint lives, to hold, use, occupy and enjoy the premises with the furniture, &c., and also the negro slaves, “ to and for the joint maintenance and support of the said T. Heyward Thayer and Catharine B., or, as \the case may be, to and for the purpose aforesaid, quarter yearly to take, collect and receive the rents, issues, hire and profits of the said messuage, furniture and negro slaves, and during the joint lives of the said T. Heyward Thayer and Catharine B. Thayer, to pay over and apply the same unto such purposes, or unto such person or persons only as the said T. Heyward *166 Thayer and Catharine B. Thayer, by any writing or writings signed jointly with their hands, shall direct or appoint, (but not so as to deprive themselves of the benefit thereof by any sale, mortgage, charge or otherwise in the way of anticipation,) and, in default of such direction and appointment, to pay the same into their proper hands for the joint use of the said T. Heyward Thayer and Catharine B. Thayer, and without being in anywise subject to the separate control, debts, contracts or engagements of the said T. Heyward Thayer.”
It is to be remarked that this is not a settlement to the sole and separate use of the wife; but to the joint use of husband and wife. To say that the husband has no interest, or no more interest than if the settlement had been to her sole and separate use would be to disregard the language of the deed and the plain meaning of the terms used by the parties. It is said the interest is declared not to be subject to the separate control, debts, &c., of the husband. But it is impossible to give a man property and take from it the incidents of property. This was ruled by Lord Eldon, in Brandon vs. Robinson, 18 Ves. 429, tad has been repeatedly recognized in our own Courts. Whatever interest the husband has, whether legal or equitable, must be subject, as an incident of property, to the payment of his debts. The only inquiry has been in what forum these rights of the creditors should be enforced. In the case of Ford vs. Caldwell, 3 Hill, 248, the settlement was to the joint use of husband and wife, not subject to the debts, contracts or engagements of the husband or his wife. The law Court of Appeals held, nevertheless, that the husband had the power of alienation for the term of his life as the trust was said to be executed. Acting perhaps, on this authority, the sheriff, in Rice vs. Burnett and Ioor vs. Hodges, (a) levied upon slaves in possession of the husband under a settlement. It was determined by the Court of Errors (overruling Ford vs. Caldwell,) that the legal estate was in the trustee, and the interest of the *167 husband could only be reached in this Court where the claims of the creditors could be met by the equities of the wife, and their respective rights be properly adjusted. Jones vs. Fort, 1 Rich. Eq. 50, recognizes the authority of these cases as deciding that “ although the legal title was in a third person as trustee, creditors may come into this Court, after exhausting their remedy at law, to make the husband’s interest in it liable to their demands.”
The general principle was elaborately discussed and approved in Heath vs. Bishop, 4 Rich. Eq. 46. In that case the circuit Chancellor sustained the claim of the creditors, although with some hesitation, and his decree was affirmed by the Court of Appeals. In announcing the judgment of the Court, the Chancellor (who also heard this case) expressed the opinion, that the interest of the creditor must be several. This was not a point in issue in the cause. No party had any interest in the estate in common with the debtor, whose interest was subjected to the .payment of his debts, and therefore no such question arose or was adjudicated. So, in Brown vs. Postell, 4 Rich. Eq. 71, the bill was filed to subject a trust estate to the payment of debts, on the ground that, being contracted for necessaries supplied for the use of the family, they were a charge as well upon the corpus as the income of the estate; and so it was at first held upon the construction given to a very obscure and informal deed. The case was subsequently heard by Chancellor Wardlaw, who dismissed the bill on the ground that there was no proof that the debts were contracted for the preservation of the trust estate, and the execution of the trusts. In the argument before the Court of Appeals, it was, for the first time, suggested, that the plaintiff might be allowed his demand out of the individual shares of certain of the ben.eficiaries. No such ground of appeal had been taken; and, in affirming the judgment of the Circuit Court, which dismissed the bill, Chancellor Dargan, in his brief observations upon this point, says, that the bill was not *168 framed with that aspect; and that that was not the case which the plaintiff had called on the defendants to answer, or the Court to adjudge, and that this presented an insurmountable impediment. This was quite enough to vindicate the judgment of the Court. He adds, however, as another difficulty, that there was no present right of enjoyment in severalty in the beneficiaries. It cannot be necessary to repeat what has been so often declared, that the Court is responsible only for the judgment rendered, and not for the variety of reasons which may be offered as leading to that conclusion. In neither of these cases was the question as to the joint or several interests of the beneficiaries involved in the pleadings, or necessary for the adjudication of the Court.
It is very true, as urged at the bar, that the enforcement of these rights of creditors may interfere with the scheme of the settlement, and sometimes be attended with embarrassment and difficulty. But the same may be, said of a will where the manifest and declared purpose of the testator is to secure to his son the enjoyment of property, without subjecting it to the consequences of his misfortunes or profligacy. He places it in the hands of trustees to hold for his use, but not subject to his debts. The effort is fruitless. The interest of the son must have the necessary incidents of property, and may be instantly appropriated to the payment of his debts. So, too, difficulties may arise in adjusting the relative equities of the wife and of the creditors. The Court must deal with such difficulties as they present themselves, and according to the means at their disposal. In the recent case of Lazarus vs. Fuller, (Charleston, 1855,) all these difficulties were strongly urged upon the consideration of the Court. The uses declared w'ere (among others) upon the death of the husband or wife, leaving issue, to appropriate the profits of the trust estate (consisting of land and slaves) to the support of the survivor and the maintenance and education of such issue. The Court ordered the trustee to take the estate into his possession, and, after providing for the *169 maintenance and education of the children, to apply the surplus to the payment of the husband’s creditors.
If the estate consisted of money invested in public securities, no practical difficulty would arise. But to permit a husband who, by the terms of his own settlement, is entitled to the joint possession and enjoyment of the proceeds of a plantation and slaves, or of the dividends of stock, to protect the whole fund from the claims of his creditors, because of the difficulty of defining and reaching such interest, would be a reproach upon the administration of justice, to which it is not, and should not be, justly obnoxious. The Court is of opinion, that a moiety of the annual rents, issues and profits of the estate included in the marriage settlement, as well as the contingent interest of T. Heyward Thayer, is subject to the payment and satisfaction .of his debts. It was said that the house in Broad street had been sold under foreclosure of a pre-existing mortgage. It is ordered and decreed, that it be referred to one of the Masters of this Court to report the present condition of the property included in the settlement, and also a scheme for carrying this decree into effect — parties having leave to apply to the Circuit Court for such further orders as may be necessary.
The decree of the Circuit Court is reformed according to the principles herein declared.
JohNSTON and Waedlaw, CC., concurred.

Decree reformed.

 Sp. Eq. 579, 593.